# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 13, 2011 Session

## METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, ET AL. v. BFI WASTE SERVICES, LLC, ET AL.

### Direct Appeal from the Circuit Court for Davidson County
No. 05C-390      Joe Binkley, Jr., Judge

### No. M2011-00586-COA-R3-CV - Filed March 22, 2012

After Metro's waste-to-energy facility was damaged/destroyed by fire, Metro and the facility's insurer filed suit against Defendants. Prior to trial, Defendants' expert was precluded from testifying regarding the facility's value, its condition prior to the fire, and the alleged pre-fire plans to discontinue its operation. A jury returned a verdict in favor of Plaintiffs, and Defendants appeal. On appeal, Defendants challenge the exclusion of certain evidence, the jury charge regarding damages, and an adverse inference jury instruction given as a sanction against Defendants. Additionally, Plaintiffs challenge the denial of prejudgment interest. We affirm the trial court in all respects.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S.,, delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the appellants, BFI Waste Services, LLC and Allied Waste North America, Inc.

Donald Capparella, Nashville, Tennessee; James L. Warren, III, Alexandra F. Markov, Jackson, Mississippi, for the appellees, Metropolitan Government of Nashville and Davidson County and Travelers Property Casualty of America

## OPINION

## I. FACTS & PROCEDURAL HISTORY

The Nashville Thermal Transfer Corporation ("NTTC")[1] waste-to-energy facility (the "Facility") owned by the Metropolitan Government of Nashville and Davidson County ("Metro") provided steam and chiller water to certain downtown Nashville buildings for heating and cooling. On May 23, 2002, the Facility was damaged/destroyed by fire. Travelers Property Casualty Company of America ("Travelers"), which insured the Facility, and Metro (collectively "Plaintiffs") filed suit, in the Davidson County Circuit Court, against multiple defendants including BFI Waste Services, LLC ("BFI") and Allied Waste North America, Inc. ("Allied") (collectively "Defendants"), alleging negligence, gross negligence, professional negligence, breach of contract, breach of warranties and negligent misrepresentation. Defendants answered, denying the allegations against them and asserting the comparative negligence of Metro.

On August 26, 2010, Plaintiffs filed a motion *in limine* to exclude, among other things, any references at trial to (1) Metro's alleged pre-fire plan to discontinue waste-to-energy operations at the Facility; or to (2) the Facility's alleged negligible or negative value at the time of the fire. Specifically, Plaintiffs sought to exclude the testimony of Defendants' expert Jonathon C. Held, who provided the following opinion in an April 12, 2010 report:

> The building was a special purpose property which was substantially obsolete at the date of the loss, and as such, only had utility for a limited period of time, and thus has negligible value.

> Because the plant had limited utility and a finite life at the time of the loss, the loss can be no more than the amount expended under the extra expense portion of the adjusted loss by Travelers in the amount of $1,694,274.00.

Plaintiffs argued that Mr. Held's opinion should be excluded because he did not conduct an appraisal of the Facility either before or after the fire, and furthermore, that he was not qualified to do so as he is not a licensed real estate appraiser. As a sanction for Defendants alleged repeated failure to reply to discovery requests, the Plaintiffs further sought both an order prohibiting Defendants from introducing, as part of their defense, evidence regarding their policies or procedures as well as an adverse inference jury instruction.

---

[1]NTTC is a separate, non-profit entity which operates the Facility.

Following a hearing on September 20, 2010, the trial court issued an order precluding Mr. Held from testifying about the Facility's value "because this constitutes an appraisal opinion, which he is not qualified to give." It further precluded him from testifying regarding the future plans for the Facility or his opinion regarding its obsolescence, finding such testimony irrelevant, and even if relevant, concluding that "the probative value of the evidence, if any, is outweighed by its prejudicial effect." Without competent proof of the Facility's value, the trial court found that the appropriate measure of damages was confined to the reasonable cost of repair. Because it found Metro's pre-fire plans for the Facility and the pre-fire condition of the Facility irrelevant to reasonable repair costs, the trial court further excluded evidence regarding such. Similarly, the trial court found irrelevant, and therefore inadmissible, Metro employee Harvey Gershman's testimony regarding the estimated demolition costs of the Facility prior to the fire. Finally, the trial court granted Plaintiffs' motion for an adverse inference jury instruction for Defendants' failure to comply with Plaintiffs' discovery requests and the court's orders instructing it to do so.

On September 27, 2010, a six-day trial commenced. On October 5, 2010, the jury returned a $7,200,000.00 verdict for Plaintiffs based upon Defendants' negligence and breach of contract. Plaintiffs then moved for pre-judgment and post-judgment interest. On December 3, 2010, the trial court entered judgment against Defendants in the amount of $6,850,000.00 representing a $350,000.00 deduction for prior settlement proceeds. The trial court granted Plaintiffs' request for post-judgment interest, but it denied their request for pre-judgment interest.

On January 3, 2011, Defendants filed a "Motion for Judgment Notwithstanding the Verdict, Motion for New Trial, and Motion for Suggestion of Remittitur." The trial court denied all requested relief, finding that, among other things, credible material evidence existed to support the jury's verdict, the evidence preponderated in favor of the jury's verdict, and the jury's verdict "was within the range of reasonableness in light of the evidence and testimony presented."

Defendants filed a notice of appeal to this Court on March 9, 2011. On June 7, 2011, Defendants filed a "Motion to Stay Further Appellate Proceedings and to Remand Jurisdiction to the Circuit Court for Davidson County, Tennessee for Consideration of Newly Rendered Relevant Precedent" based upon the decision of *City of Pulaski v. Morris*, No. M2010-00047-COA-R3-CV, 2010 WL 3732161 (Tenn. Ct. App. Sept. 23, 2010), which this Court denied.

## II. ISSUES PRESENTED

Defendants BFI and Allied present the following issues for review, as summarized:

1. Whether the trial court erred in excluding evidence regarding: (1) the value of the Facility at the time of the fire; (2) the Facility's pre-fire condition; and (3) the future plans for the Facility;

2. Whether the trial court allowed all properly preserved offers of proof;

3. Whether the trial court erred in charging only the reasonable cost to repair as damages; and

4. Whether the trial court erred in ordering an adverse inference jury instruction sanction.

Additionally Plaintiffs Metro and Travelers present the following issues, as summarized:

1. Whether Defendants waived appellate consideration of the trial court's exclusion of Facility value opinions from Mr. Held; and

2. Whether the trial court abused its discretion in denying prejudgment interest.

For the following reasons, we affirm the trial court in all respects.

## III. STANDARD OF REVIEW

The standard of review of a jury verdict is set forth in Tennessee Rule of Appellate Procedure 13(d), which provides that "[f]indings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." Evidentiary rulings, including decisions regarding the admissibility of expert testimony, however, are reviewed under the abuse of discretion standard. *McDaniel v. CSX Transp., Inc.,* 955 S.W.2d 257, 263 (Tenn. 1997) (citing *State v. Ballard,* 855 S.W.2d 556, 562 (Tenn. 1993)); *Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 418-19 (Tenn. Ct. App. 2004) (citing *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992)). "'The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives.'" *Danny L. Davis Contractors*, 157 S.W.3d at 419 (quoting *Crowe v. First Am. Nat'l Bank*, No. W2001-00800-COA-R3-CV, 2001 WL 1683710, at *9 (Tenn.

Ct. App. Dec. 10, 2001)). Under the abuse of discretion standard, "we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative." *Id.*

Once an abuse of discretion in the admission or exclusion of evidence is shown, the party claiming error must also show that the erroneous admission or exclusion "more probably than not affected the verdict." *See id.* **at \*8** (citing Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.")).

We review a trial court's conclusions of law, including the construction of a statute, under a *de novo* standard upon the record with no presumption of correctness. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.,* 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)); *Robinson v. LeCorps*, 83 S.W.3d 718, 722-23 (Tenn. 2002) (citing *Ivey v. Trans Global Gas & Oil*, 3 S.W.3d 441, 446 (Tenn. 1999)).

## IV. DISCUSSION

### A. Exclusion of Evidence

As stated above, prior to trial, the trial court granted Plaintiffs' motions *in limine* to exclude evidence regarding the value of the Facility, as well as evidence concerning the pre-fire condition of the Facility and the pre-fire future plans for it. On appeal, Defendants contend that such exclusions allowed the jury to hear only a "truncated version of the evidence" and that the exclusions "formed the basis of a virtual directed verdict for the Plaintiffs." We address the evidentiary exclusions appealed below.

#### 1. Construction Expert Jonathon Held's Valuation Opinions

Defendants retained construction expert Jonathon Held to determine "the amount of loss" to the Facility from the May 2002 fire. The trial court, however, excluded his valuation opinions of the Facility concluding that he was not qualified to give such opinions.[2] Moreover, it excluded his opinions regarding the future plans for, and obsolescence of, the Facility concluding that such opinions were irrelevant and even if relevant, that they were prejudicial.

#### I. Waiver

_____

[2]The trial court did not exclude his *repair cost* opinions.

At the outset, we must consider Plaintiffs' argument that Defendants failed to properly preserve the exclusion of Mr. Held's valuation testimony for our review by failing to raise the issue in their motion for new trial. "It has long been the rule in this state that in order to preserve errors for appeal, the appellant must first bring the alleged errors to the attention of the trial court in a motion for new trial." *Fahey v. Eldridge*, 46 S.W.3d 138, 141 (Tenn. 2001) (citing *Memphis St. Ry. Co. v. Johnson*, 114 Tenn. 632, 88 S.W. 169 (1905)). "This requirement was initially imposed . . . to make more efficient the process of reviewing 'the ever increasing number of appeals,' and . . . this practice significantly aids the functions of the appellate courts by limiting and defining the issues for review." *Id.* at 141-42 (quoting *Board of Equalization v. Nashville, C. & St. L. Ry.*, 148 Tenn. 676, 680, 257 S.W. 91, 93 (1923)). More importantly, though, motions for a new trial provide the trial judge with "an opportunity to consider or to reconsider alleged errors committed during the course of the trial or other matters affecting the jury or the verdict[.]" *Id.* (quoting *McCormic v. Smith*, 659 S.W.2d 804, 806 (Tenn. 1983)).

The requirements for a motion for new trial are set forth in Tennessee Rule of Appellate Procedure 3(e), which provides in relevant part:

> in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Rule 3(e) requires that the grounds upon which a new trial is sought must be "specifically stated," but "the Rule is silent as to how specific these grounds must be." *Fahey*, 46 S.W.3d at 142. Prior Tennessee Supreme Court decisions have "stated the standard for specificity as being 'as specific and certain as the nature of the error complained of will permit.'" *Id.* (citing *Johnson*, 114 Tenn. at 643, 88 S.W. at 170; *McCormic*, 659 S.W.2d at 805); *see also State v. Ashburn*, 914 S.W.2d 108, 114 (Tenn. Crim. App. 1995) ("Tennessee courts have held that the grounds for relief set out in a motion for new trial must be as specific and certain as the nature of the error will permit.") (citation omitted). Although the Court has acknowledged that "this standard says little more than does Rule 3(e) itself, several principles may be determined from the Rules and case law as to the degree of specificity needed in a motion for new trial to properly preserve issues for appeal." *Id.* (footnote omitted).

First, the motion should contain a concise factual statement of the error, "sufficient to direct the attention of the court and the prevailing party to it." *Johnson,* 114 Tenn. at 644, 88 S.W. at 170–71. Under this standard, it is clearly improper to simply allege, in general terms, that the trial court committed error, either by taking some action or by admitting or excluding evidence; rather, the motion should identify the specific circumstances giving rise to the alleged error so that it may be reasonably identified in the context of the entire trial. *See . . . Ashburn,* 914 S.W.2d [at] 114 . . . . Accordingly, a well-drafted motion alleging improper admission or exclusion of testimony, for example, should identify the witness giving the testimony and provide a short and plain summary of the testimony improperly admitted or excluded. Moreover, a well-drafted motion alleging error in the jury instructions should set forth the language of the instruction given by the court and the language of the instruction rejected by the court if an alternative instruction was requested.

*Id.* at 142-43 (internal footnote omitted). Additionally, a motion for new trial should set forth a specific legal ground for the alleged error, a "general objection" typically being insufficient. *Id.* at 143 (citing Tenn R. Evid. 103(a)(1); *Jack M. Bass & Co. v. Parker*, 208 Tenn. 38, 48, 343 S.W.2d 879, 883 (1961)). Thus, "in addition to setting forth a concise statement of the factual grounds, a well-drafted motion for a new trial should also identify, with reasonable clarity, the legal ground upon which the trial court based its actions and contain a concise statement asserting the legal reasons why the court's decision was improper." *Id.*

Tennessee Rule of Appellate Procedure 1 states that the Rules "shall be construed to secure the just, speedy, and inexpensive determination of every proceeding on its merits." Thus, Appellate courts should view motions for a new trial in the light most favorable to the appellant, resolving any doubt in favor of preserving the issue to avoid needlessly favoring "technicality in form" over substance. *Id.* at 143. Still, "courts cannot find error where none has been actually alleged, no matter how liberal a construction is given to the motion." *Id.*

In their motion for new trial, Defendants allege the following errors:

A.    The Adverse Inference Jury Instruction Arising from the Court's Decision to Sanction BFI for Alleged Discovery Violations Clearly Outweighs the Offense Committed, Improperly Punishes BFI for an Offense Beyond its Control and Allowed the Jury to Draw an Inference that Contradicts Existing Evidence

B.      Plaintiffs Failed to Produce an Essential Element Of Their Cause Because Although BFI's Duties Arose Under Contract, No Contractual Duties Were Introduced Into Evidence At Trial; Indeed, Metro Never Introduced Any Evidence Establishing Duties Owed By BFI

C.      The Jury Instruction As To The Determination Of The Value Of Loss Was Inconsistent With Tennessee Law And Defendants Should Have Been Permitted to Introduce Evidence of The Pre-Loss Plan for Nashville Thermal

D.      The Court Must Allow BFI the Opportunity to Present Offers of Proof on Those Evidentiary Matters Subject to The Court's September 20, 2010 Order Limiting BFI's Presentation of Evidence

E.      The Verdict Was Excessive, Against the Weight Of the Evidence and Contrary To Principles of Justice

Mr. Held is not named in Defendants' motion for new trial or supporting memorandum, nor is the exclusion of his valuation testimony expressly alleged as error in either. Despite this omission, Defendants contend that by raising the allegedly erroneous jury instruction regarding damages in their motion, that Mr. Held's exclusion was preserved because "[t]he jury instruction issue inherently encompasses Mr. Held's exclusion and the trial court's interpretation of [§ 62-39-101, et seq.] since it is for that reason that only part of the instruction was given to the jury." Defendants also point to their brief in support of their motion for new trial,[3] which cited various evidence excluded by the trial court's September 9, 2010 order[4]–including Mr. Held's testimony regarding the Facility's value, its future plans, and its obsolescence–and argued that *offers of proof* should have been allowed

---

[3]Defendants' motion for new trial specifically incorporated their brief in support of the motion. Thus, we find it appropriate to treat the memorandum as part of the motion for new trial. ***See Filson v. Wells Fargo Home Mortg. Inc.***, No. M2007-01842-COA-R3-CV, 2008 WL 3914899, at *6-7 (Tenn. Ct. App. Aug. 25, 2008) (citing *Johnson v. Allstate Ins. Co.*, No. M1999-01639-COA-R3-CV, 2000 WL 1156642 (Tenn. Ct. App. Aug. 16, 2000)).

[4]In their brief and memorandum accompanying their motion for new trial, Defendants "request that the Court allow [them] a new trial so that the evidence which was excluded originally [in the September 9, 2010 order] can be included in the evidence which the jury uses in its deliberation." This general allegation of error, however, is insufficient to preserve an error for appeal. ***See Fahey***, 46 S.W.3d at 143.

with regard to these exclusions.[5] Finally, Defendants argue that Mr. Held's exclusion was preserved for appeal based upon their so-called oral requests for reconsideration of his exclusion throughout the trial.

Applying the above-cited principles to the case at bar, we cannot agree with Defendants' assertion that their objection to jury instructions and requests for offers of proof preserved the issue of the exclusion of Mr. Held's valuation testimony for appeal. Defendants' alleged persistent calls for reconsideration of his exclusion throughout the trial do not obviate Rule 3(e)'s requirement that grounds be "specifically stated" in a motion for new trial, and instead, the reconsideration requests only bolster the conclusion that Mr. Held's exclusion could have been specifically alleged as error in Defendants' motion. *See Ashburn*, 914 S.W.2d at 114 (citing *State v. King*, 622 S.W.2d 77, 79 (Tenn. Crim. App. 1981) ("Tennessee courts have held that the grounds for relief set out in a motion for new trial must be as specific and certain as the nature of the error will permit.")). We recognize that motions for new trial should be reviewed in a light favorable to preserving the issues, but we "cannot create an error where none has been legitimately preserved." *Fahey*, 46 S.W.3d at 146. Because Defendants' motion is substantively deficient, *see Malibu Equestrian Estate, Inc. v. Sequatchie Concrete Serv., Inc.*, No. M2005-02954-COA-R3-CV, 2007 WL 2200171, at *4 (Tenn. Ct. App. July 30, 2007)), we find that the issue of Mr. Held's valuation testimony exclusion is waived on appeal.

## 2. Evidence of Pre-Fire Condition, Future Plans & Demolition Costs

Based upon its exclusion of Mr. Held's valuation testimony, the trial court deemed irrelevant and/or prejudicial, Mr. Held's testimony regarding the pre-fire condition of, and future plans for, the Facility.[6] According to Defendants, the trial court also limited other witnesses from testifying regarding the Facility's current condition, its alleged impending demolition, and the costs of such demolition. Specifically, Defendants claim the following testimonial limitations: Barry Burcham, owner of former co-defendant Classic Pride, Metro employee Chace Anderson, and Facility manager Floyd Mitchell were prevented from testifying regarding future demolition of the Facility; Metro employee David Manning was

---

[5]An offer of proof was allowed regarding Mr. Held.

[6]Plaintiffs contend that the trial court's exclusion of evidence regarding pre-fire plans was based upon uncertainty regarding demolition. However, based upon the trial court's statements, we cannot agree with this assessment. For example, the trial court stated its belief that future demolition could be proved and it further seemed to opine that demolition was unrelated to repair costs.

prevented from testifying regarding Metro's acquisition of bonds to build a replacement facility; and Metro employee Harvey Gersham was prevented from testifying regarding demolition costs. On appeal, Defendants contend that even if the appropriate measure of damages is the cost to repair–that is, if Mr. Held's valuation testimony was properly excluded–that the pre-fire condition of the Facility and the future plans/costs to demolish the Facility are, nonetheless, relevant to the cost to repair.

In their motion for new trial, Defendants alleged, as error, the exclusion of evidence regarding "the pre-loss plan" for the Facility. However, they failed to challenge the exclusion of evidence concerning the current condition of the Facility, and they alleged only the erroneous exclusion of evidence related to demolition *plans*, as opposed to demolition *costs*. Demolition *costs* were noted only to challenge the alleged failure to allow an *offer of proof* regarding Mr. Gershman's testimony. Accordingly, we find that Defendants may not challenge, on appeal, the exclusion of Mr. Gersham's demolition cost testimony nor the exclusion of evidence related to the Facility's pre-fire condition. *See* **Tenn. R. App. 3(e)**. We review the trial court's exclusion of evidence regarding the Facility's future plans, based upon its conclusion that such evidence is irrelevant and/or prejudicial, under the abuse of discretion standard. **McDaniel**, 955 S.W.2d at 263 (citations omitted).

Importantly, Defendants fail to identify how the alleged future plans to demolish the Facility are relevant to Plaintiffs' interest in the Facility at the time of the fire. Assuming relevancy, *arguendo*, we, nonetheless, find that the prejudicial effect of such evidence greatly outweighs its probative value, and threatens to "open a field of speculation and conjecture that would cloud the issue of actual loss in a maze of collateral issues." *See Am. Ins. Co. v. Treasurer, School District No. 37, McCurtain, Oklahoma*, 273 F.2d 757, 758 (10th Cir. 1959) (citation omitted). Accordingly, we conclude that the trial court did not abuse its discretion in excluding evidence of the alleged future plans to demolish the Facility.

### B.    *Jury Instruction Regarding Damages*

At the conclusion of the trial, the trial court instructed the jury as follows with regard to damages:

> If, under the Court's instructions, you find that the Plaintiff is entitled to damages, then you must award Plaintiff damages that will reasonably compensate the Plaintiff for the caused loss or harm which has been proven by a preponderance of the evidence, provided you also find it was or will be

suffered by the Plaintiff and was legally caused by the act or omission upon which you base your finding of liability.

As previously instructed the parties have stipulated to reasonable repair costs to the cranes and to the amount of the Plaintiff's business losses.

You are also to determine damages in this matter by considering the reasonable cost of repairing the damage to the Nashville Thermal plant.

Defendants contend that this charge was error, and that the proper measure of damages was the lesser of the diminution in value caused by the fire and the cost to repair the Facility.

Plaintiffs contend that Defendants failed to meet their burden of proving the diminution in value so that it could be offered as an alternative measure of damages. *See Conatser v. Ball*, No. M1999-00583-COA-R3-CV, 2001 WL 873457, at *12 (Tenn. Ct. App. Aug. 3, 2001) ("[T]he plaintiffs do not have the burden of offering alternative measure of damages. The burden is on the defendant to show that the cost of repairs is unreasonable when compared to the diminution in value[.]"). Based upon the exclusion of Mr. Held's valuation testimony, and the waiver of any challenge to this exclusion on appeal, we find the trial court did not error in charging reasonable cost to repair as damages.

### C.    *Adverse Jury Instruction*

Next, we consider Defendants' argument that the trial court erred in granting an adverse jury instruction as a sanction for their alleged failure to comply with discovery requests. Tennessee Rule of Civil Procedure 37.02 permits a trial court to sanction a party for failure to comply with court-ordered discovery. Such sanctions may include "[a]n order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order[.]" **Tenn. R. Civ. P. 37.02(A)**. Sanctions imposed under Rule 37 are reviewed for abuse of discretion. **Amanns v. Grissom**, 333 S.W.3d 90, 97 (Tenn. Ct. App. 2010) (citing *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988)). "When reviewing a discretionary decision by the trial court, the 'appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decisions.'" **Id.** (quoting *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

We begin our discussion of this issue with a recitation of the facts relevant to the imposition of the sanction:[7]

On April 19, 2007, the Court entered a Scheduling Order. In the Scheduling Order, Plaintiffs were ordered to provide a [Tennessee] Rule [of Civil Procedure] 30.02(6) Deposition Notice to counsel for Allied Waste. Allied Waste was ordered to designate the appropriate representative and schedule the corporate deposition.

An Amended Scheduling Order was entered on August 24, 2007. Again, Allied Waste was ordered to designate the appropriate representative of Allied Waste to testify pursuant to Plaintiffs' Rule 30.02(6) Deposition Notice.

On November 15, 2007, Plaintiffs provided counsel for Allied Waste with a draft 30.02(6) deposition notice and requested that the deposition be scheduled in December or January. . . .

For several months, Allied Waste failed to designate a corporate representative for deposition or otherwise correspond with Plaintiffs regarding this issue.

Plaintiffs filed a Notice of Rule 30.02(6) Deposition of Allied Waste's corporate representative(s) on January 7, 2008, seeking information regarding specific topics enumerated within the deposition notice. Due to Allied Waste's failure to cooperate in scheduling the deposition, Plaintiffs unilaterally noticed the deposition for January 24, 2008.

The parties ultimately agreed to re-schedule this deposition for March 25, 2008, and Allied Waste's counsel agreed not to object to the taking of this deposition after the February 1, 2008, discovery deadline in effect at that time. The parties filed an Agreed Order memorializing this agreement, which was entered on February 8, 2008.

---

[7]This timeline of events is taken from Plaintiffs' Motion for Sanctions, the accuracy of which Defendants acknowledge.

Counsel for Allied Waste contacted Plaintiffs' counsel the week before the Allied Waste corporate deposition was scheduled and advised Plaintiffs' counsel that the individual who was designated to testify on behalf of Allied Waste, Ms. Michelle Casey, did not possess sufficient corporate knowledge regarding the Rule 30.02(6) deposition topics to provide much substantive testimony. Allied Waste's counsel further advised Plaintiffs' counsel that Mr. Wayne Gill would be Allied Waste's main corporate designee. Based on this representation, the parties agreed to reschedule the corporate deposition.

Pursuant to the parties' agreement to reschedule the Allied Waste corporate deposition, Plaintiffs made several attempts to obtain mutually available dates to take Allied Waste's corporate deposition. Counsel for Allied Waste was again unresponsive to the multiple attempts made by Plaintiffs' counsel to communicate regarding this issue.

Since counsel for Allied Waste did not respond to Plaintiffs' counsel's attempts to agree on a date, Plaintiffs re-noticed the Rule 30.02(6) deposition of Allied Waste on July 28, 2008, unilaterally setting the deposition for August 27, 2008.

Plaintiffs' counsel also filed a Motion to Enforce Court's Order and for Appropriate Sanctions on August 6, 2008, requesting that the Court enter an order requiring Allied Waste to comply with the previous Scheduling Orders ordering it to designate a corporate representative for deposition. Plaintiffs also sought sanctions for Allied Waste's repeated failures to comply with the Court's orders.

Allied Waste's continued failure to designate a corporate representative was addressed in two Case Management Conferences with Special Master Nichols on August 28, 2008 and September 2, 2008. Pursuant to those Case Management Conferences, a Case Management and Scheduling Order was entered on September 30, 2008, setting the corporate depositions of Allied Waste for October 13 and 15, 2008.

Allied Waste designated Connie Gecich, Michel[l]e Casey, and Wayne Gill as its corporate representatives. Allied purportedly determined which corporate representative possessed knowledge regarding each of the topics

listed in Plaintiff's Rule 30.02(6) Deposition Notice and notified Plaintiffs' counsel which deponent would testify regarding each topic. The corporate depositions of Ms. Gecich and Ms. Casey were conducted telephonically on October 13, 2008. The corporate deposition of Mr. Gill was conducted on October 15, 2008, in Nashville, Tennessee.

The designated corporate deponents were unable to answer questions regarding all of the deposition topics for which they were designated to testify–a fact Allied Waste was aware of when it cancelled the previously scheduled deposition of Michelle Casey in March 2008.

At a December 10, 2008, Case Management Conference, Plaintiffs raised the issue of Allied Waste's repeated failure to properly designate a corporate deponent. Special Master Nichols ordered the parties to attempt to resolve the discovery dispute regarding the completion of the Allied Waste corporate deposition by December 30, 2008. If the parties were unable to resolve the dispute, Plaintiffs were to file the appropriate discovery motion on or before January 15, 2009.

Again, Allied Waste failed to designate a corporate deponent.

On January 15, 2009, Plaintiffs filed a Motion to Compel Discovery from Allied Waste. The Court heard oral arguments on Plaintiffs' Motion, as well as other matters, on February 13, 2009.

After considering the procedural history of the case, the motion papers filed by the parties and statements made in court, the Court entered an Order on March 20, 2009, granting the Plaintiffs' Motion to Compel and ordering Allied Waste to identify a competent corporate representative who can authenticate and knowledgeably discuss the documents produced by Allied Waste. The Court granted Allied Waste 21 days from the entry of the Order, or up to and including April 10, 2009, to comply with the Order.

. . . .

-14-

Yet again, Allied Waste failed to comply with an Order of th[e trial] Court.

On January 15, 2009, Plaintiffs filed a Motion to Compel Discovery, seeking an order compelling Allied Waste to immediately provide the name of its corporate designee(s) and to identify dates of availability to conduct a deposition. Plaintiffs further sought attorney fees and expenses associated with the motion. In a March 20, 2009 Order, the trial court granted Plaintiffs' Motion to Compel, and it requested further information regarding Plaintiffs' fees and expenses incurred.

On April 17, 2009, Plaintiffs filed a Motion for Sanctions seeking reasonable expenses incurred in enforcing discovery, including attorney fees, as well as the entry of a default judgment for Allied Waste's "disobedience" of court orders. In their August 26, 2010 Motion *In Limine*, Plaintiffs recounted their discovery difficulties and they informed the trial court that they had deposed Defendant's designee David Murphy, but he, like previous designees, was unable to testify regarding the corporate procedures and guidelines in place at the time of the fire. Plaintiffs then requested "that the Court enter an order prohibiting Allied Waste/BFI from putting forth a defense to the claims asserted in this matter at trial[,]" or alternatively, they requested "that the Court instruct the jury that it should draw a negative inference from the absence of relevant Allied Waste policies and procedures, and/or any other sanctions the Court deems appropriate." Following a hearing, the trial court ordered an adverse inference jury instruction as follows:

The Court instructs you that BFI was required by Court Order to produce certain corporate policies and procedures and a witness to testify about them in this lawsuit. Those policies and procedures relate to fire safety and the hiring and management of subcontractors. BFI failed to comply with the Court's Order. Accordingly, the Court instructs you that you may infer that the evidence that BFI failed to produce would have been unfavorable to it. You are not, however, required to determine in what respect it would have been unfavorable nor to give this adverse inference any particular weight in comparison with other facts and circumstances. The inference to be drawn from the conduct of BFI may well be a persuasive factor in the process of weighing and interpreting the testimony offered by BFI.

On appeal, Defendants argue that the sanction was inappropriate because the policies

and procedures, themselves, were produced to Plaintiffs, because the identity of Eileen Shuler, who was ultimately identified in 2010 as the corporate representative who could testify regarding the policies and procedures, was made known to Plaintiffs in October 2008 several years before the adverse jury instruction was requested, and because the jury instruction was "overbroad and unrebuttable[.]" At trial, however, Defendants objected only to the adverse inference jury instruction *being given*; they did not object to the *language* of the jury instruction.[8] Thus, on appeal we will not consider Defendants' arguments regarding the breadth and alleged unrebuttable nature of the instruction.

Defendants acknowledge that they failed to formally identify a corporate witness under Rule 30.02(6) who could ably testify regarding the origin of company policies and procedures until early September 2010, just weeks before trial commenced. However, they assert that in her 2008 deposition, "[M]ichelle Casey could not answer all of Plaintiffs' questions regarding policies and procedures, [but] she identified her co-employee, Eileen Shuler, as the person who could."[9] Plaintiffs' failure to depose Ms. Shuler, following her identification by Ms. Casey, Defendants contend, renders sanctions inappropriate.

Tennessee Rule of Civil Procedure 30.02(6) provides in relevant part that

[a] party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, *the organization so named shall designate* one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

---

[8]At trial, the following exchange was made:

Plaintiffs' counsel:    And so really the only issue that's out there where there is a problem, it's not about the wording of the instruction anymore. It's just about whether you should give one at all.

In other words, the defendant still isn't - - they're not backing away from "we shouldn't have been sanctioned." But with respect to the language of the instruction, there is no objection on either side.

Defendants' counsel:   That's a correct statement of the defendants['] position.

[9]It appears that Ms. Casey's deposition is not included in the record before us. However, from the parties' briefs it appears that Ms. Shuler was identified by Ms. Casey as having information regarding the policies and procedures at issue, but Ms. Shuler was never designated by Defendants as its corporate representative.

(emphasis added). Accordingly, the burden was on Defendants to *designate* Ms. Shuler. Moreover, Plaintiffs cannot be responsible for failing to identify Ms. Shuler as the appropriate corporate representative when Defendants, themselves, were admittedly unaware that she was the appropriate designee.[10] Furthermore, the production of corporate documents does not satisfy the trial court's order to designate a corporate representative for deposition regarding such. In sum, we find that the trial court did not abuse its discretion in ordering an adverse inference jury instruction as a sanction for Defendants' failure to comply with discovery orders.[11]

## D. *Prejudgment Interest*

Finally, we address Plaintiffs' argument that the trial court erred in refusing to award prejudgment interest. We review a trial court's decision to award or deny prejudgment interest under the abuse of discretion standard. ***Post v. Post***, No. M2008-01488-COA-R3-CV, 2009 WL 1850880, at *4 (Tenn. Ct. App. June 26, 2009).

Tennessee Code Annotated section 47-14-123 allows for prejudgment interest "in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum[.]" In *Myint v. Allstate Insurance Co.*, 970 S.W.2d 920 (Tenn. 1998), our Supreme Court set forth the standard by which courts award prejudgment interest. "*Myint* departed from prior decisions strictly limiting prejudgment interest awards to cases involving substantial certainty in the existence and amount of an underlying obligation and placed the principles of equity at the forefront of a court's decision[.]" ***Poole v. Union Planters Bank, N.A.***, 337 S.W.3d 771, 790 (Tenn. Ct. App. 2010). According to *Myint*,

> the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing.

---

[10]Before the trial court in September 2010, Defendants' counsel stated that "I didn't know what to say other than the fact things were going on, they got by me, I didn't know about Ms. Schuler. Believe me, I wish that I had known. It would have solved everybody a lot of problems."

[11]Based upon this conclusion, we find it unnecessary to discuss Defendants' argument that the trial court erred in allegedly refusing to permit them to make an offer of proof regarding the testimony of Ms. Shuler.

*Id.* (quoting *Myint*, 970 S.W.2d at 927 (citing *Mitchell v. Mitchell*, 876 S.W.2d 830, 832 (Tenn. 1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992)). "This Court has interpreted the decision in *Myint* as effecting a sea change in the principles guiding a trial court's decision; equity and fairness, in almost all cases, now mandate full compensation for losses that the defendant caused, including economic loss stemming from the plaintiff's inability to earn interest on funds he should have received." *Id.* at 791 (citing *General Const. Contractors Ass'n, Inc. v. Greater St. Thomas Baptist*, 107 S.W.3d 513, 526 (Tenn. Ct. App. 2002)). However, "[t]he fact that equity and fairness will frequently require courts to award prejudgment interest does not suggest that the denial of such an award is lightly overturned on appeal. A trial court's decision is still reviewed under an abuse of discretion standard and will stand so long as it finds support in the record and the applicable equitable factors." *Poole*, 337 S.W.3d at 791.

Equitable factors relevant to the decision to award or deny prejudgment interest include: "(1) promptness in the commencement of a claim, (2) unreasonable delay of the proceedings by either party, (3) abusive litigation practices by either party, (4) the certainty of the existence of an underlying obligation, (4) the certainty of the amount in dispute, and (5) prior compensation for the lost time value of the plaintiff's money." *Id.* (citing *In re Estate of Ladd*, 247 S.W.3d 628, 647 (Tenn. Ct. App. 2007); *Christmas Lumber Co. v. Valiqa*, 99 S.W.3d 585, 596 (Tenn. Ct. App. 2002); *General Const..* 107 S.W.3d at 526; *Scholz v. S.B. Intern., Inc.*, 40 S.W.3d 78, 83-84 (Tenn. Ct. App. 2000)).

Plaintiffs maintain that each of the above-cited factors weighs in favor of awarding prejudgment interest in this case. Specifically, Plaintiffs claim that prejudgment interest was appropriate because Plaintiffs promptly pursued their claims against Defendants, because Plaintiffs did not unreasonably delay the litigation of the matter, and because the amount of recovery was certain. Plaintiffs seem to contend that the trial court ignored the applicable factors, and instead based its finding solely upon "principles of equity." This, they claim, was an abuse of discretion.

The transcript from the hearing before the trial court, however, reveals that the trial court appropriately considered the relevant factors. At the hearing, the trial judge stated as follows:

> Well, let me go ahead and rule on that. I don't think this is an appropriate case
> for prejudgment interest. I think the principles of equity, the degree to which
> the principal amount is uncertain, the degree to which the principal amount is
> in dispute are all the issues that were in this case. Arguments were well done
> on these issues. I put more emphasis on principles of equity than I do the other

-18-

two. The factors that are set out in *Myint*, those are not the only factors I can consider in exercising discretion, I realize, but I'm going to stick to case law and use those factors. But I weigh more heavily my decision on principles of equity.

Even if Plaintiffs are correct that the "majority of the damages were stipulated" by Defendants *at trial*, damages were highly contested until Mr. Held was excluded only days before the commencement of trial. The trial court found it appropriate, under principles of equity and the particular circumstances of the case, to give increased consideration to the damage dispute. We find the trial court's decision to deny Plaintiffs' request for prejudgment interest finds support in both the applicable legal principles and in the evidence contained in the record. **See Poole**, 337 S.W.3d at 790. Accordingly, the trial court's discretionary determination must stand.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the trial court in all respects. Costs of this appeal are taxed to Appellants, BFI Waste Services, LLC and Allied Waste North America, Inc., and their surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.