DANNY L. DAVIS CONTRACTORS,
INC.

v.

B. Allen HOBBS, et al.

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Assigned on Briefs March 24, 2004.

July 30, 2004.

Permission to Appeal Denied by
Supreme Court Feb. 28, 2005.

Danny P. Dyer, Knoxville, Tennessee, for the appellant, Mullen Construction Co., Inc.

John T. McArthur and Melanie E. Davis, Maryville, Tennessee, for the appellee, Danny L. Davis Contractors, Inc.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Danny L. Davis Contractors, Inc. ("the plaintiff") sued (1) B. Allen Hobbs and Pete Roach,[1] who together did business as BH Construction, and (2) Mullen Construction Co., Inc., ("Mullen Construc-

---

1. The plaintiff was unable to effect service of process on Hobbs and Roach. Both are apparently out-of-state residents.

tion"), a Tennessee corporation, seeking to collect money owed under a contract the plaintiff entered into with BH Construction for the performance of electrical work in connection with the construction of a CiCi's Pizza restaurant. The general sessions court awarded a judgment against Mullen Construction for $12,506.71. Mullen Construction filed an appeal bond, and the case was then tried *de novo* without a jury in the trial court. The trial court entered a judgment of $12,506.21 against Mullen Construction. Additionally, the trial court revoked the contractor's license of Mullen Construction, with reinstatement dependent upon the company satisfying the judgment. Mullen Construction appeals, contending that the trial court (1) abused its discretion in admitting "hearsay" testimony into evidence; (2) erred in finding Mullen Construction liable on the contract under an agency theory; and (3) erred in revoking its contractor's license pursuant to Tenn.Code Ann. § 62–6–118 (1997). We affirm.

## I.

BH Construction contracted with F & M Pizza, Inc., to build a CiCi's Pizza establishment in Alcoa. BH Construction, which is a Texas-based company, did not have a Tennessee general contractor's license. Such a license is required for construction over $25,000. The CiCi's Pizza job exceeded this amount.

Mullen Construction, which is located in Jackson, is a licensed Tennessee general contractor. Its president, Leon Mullen ("Mullen"), was approached by "a friend of a friend" and asked to obtain a building permit for BH Construction, which would allow it to fulfill its contractual obligations to F & M Pizza, Inc. Mullen agreed, in his words, to "pull the permit" for BH Construction, even though Mullen was aware that in doing so, he was, again in his

words, "exposing [him]self to some civil liability." In an attempt to protect his company against this risk, BH Construction entered into an agreement to indemnify and hold Mullen Construction harmless from any liability. Prior to entering into this agreement, Mullen admitted that he knew "[n]othing" about BH Construction.

On April 27, 1998, the City of Alcoa issued a building permit for the CiCi's project, which listed Mullen Construction as the general contractor. A few weeks later, the plaintiff was approached by an individual, whose identity is not clear in the record, and asked to submit a bid for the electrical work on the project. As a result of this solicitation, Stanley Jones, an employee of the plaintiff, met with J. Brown to discuss the project. While Brown gave Jones a business card of Mr. Mullen emblazoned with "Mullen Construction Co., Inc.," Brown was actually employed by BH Construction. The plaintiff submitted its bid for the electrical work on June 9, 1998, addressed to Mullen Construction.

The plaintiff's bid for the electrical work was accepted. Before entering into an agreement on the CiCi's project, Danny Davis, the president of the plaintiff company, verified that Mullen Construction was a licensed general contractor in Tennessee. Davis and Jones then went to the job site, where they met with Brown and Pete Roach, the latter being one of the principals of BH Construction. Before signing a document entitled "subcontract agreement," Davis and Jones inquired as to why the agreement listed "BH Construction" as the contracting party, rather than Mullen Construction. Jones later testified that Brown told him that "BH Construction and Mullen Construction [were] the same company." Davis testified similarly; he said "I was told"[2] that the two companies "were one [and] the same."

---

**2.** It is not clear from the record as to whether

Brown, Roach, or both of them make this

The plaintiff proceeded to complete all of the electrical work required on the project. However, payment for the work was not forthcoming. The plaintiff filed a mechanic's lien of $25,013.42 against F & M Pizza's leasehold interest in the property. Following negotiations with the owner of F & M Pizza, the plaintiff agreed to accept $12,506.71, which amount represented exactly half of what the plaintiff was owed on the project.

In February, 2002, the plaintiff filed a claim in general sessions court against Mullen Construction, and the sessions court awarded the plaintiff a judgment against Mullen Construction in the amount of $12,506.71. That same year, the plaintiff filed a complaint against Mullen Construction with the Tennessee Contractors Licensing Board, which fined Mullen Construction $500 for illegally using its contractor's license for the benefit of BH Construction.

Mullen Construction appealed the general sessions court judgment to the circuit court. The trial court, sitting without a jury, entered a judgment in favor of the plaintiff for $12,506.21.[3] In addition, the trial court revoked Mullen Construction's contractor's license, pending the full satisfaction of the judgment rendered against it. From this judgment, Mullen Construction appeals.

## II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual findings—one that we must honor "unless the preponderance of the evidence is otherwise." Tenn. R.App. P. 13(d). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn.1993).

## III.

Mullen Construction presents the following issues for our review:

1. Did the trial court properly admit into evidence the statements of BH Construction representatives pertaining to the relationship between Mullen Construction and BH Construction?

2. Did the trial court err in determining that an agency relationship existed between Mullen Construction and BH Construction?

3. Did the trial court err in revoking Mullen Construction's contractor's license pursuant to Tenn.Code Ann. § 62–6–118?

## IV.

## A.

Mullen Construction first asserts that the trial court abused its discretion in admitting into evidence statements made by representatives of BH Construction. Specifically, Mullen Construction takes issue with the testimony of Davis and Jones that BH Construction employees Brown and/or Roach represented to them that BH Construction and Mullen Construction were "one [and] the same."

In Tennessee, decisions regarding the admissibility of evidence rest with-

---

**3.** While the plaintiff requested damages in the amount of $12,506.71 in its response to Mullen Construction's motion for a more definite statement (which was later held to constitute an amended complaint), Davis testified at trial that the plaintiff was seeking damages of $12,506.21. The trial court apparently relied on the latter request and awarded damages in that amount.

in the sound discretion of the trial court. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn.1992). Upon review of the trial court's decision to admit or exclude evidence, we recognize that "trial courts are generally accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion." *Id.* "The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives." *Crowe v. First Am. Nat'l Bank*, No. W2001–00800–COA–R3–CV, 2001 WL 1683710, at *9 (Tenn. Ct.App. W.S., filed Dec. 10, 2001) (citing *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn.Ct. App.2000)).

■ Mullen Construction contends that the statements of Brown and/or Roach are inadmissible hearsay because the statements were offered for their truth: to prove that an agency relationship existed between Mullen Construction and BH Construction. Under Tenn. R. Evid. 801(c), " '[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Unless subject to an exception, "[h]earsay is not admissible." Tenn. R. Evid. 802. We agree with Mullen Construction that the plaintiff was offering the statements of the BH Construction representatives to prove their truth and, this being the case, those statements were hearsay. However, our inquiry does not end there. If the statements at issue fall within the ambit of a hearsay exception, they are admissible.

■ The plaintiff advances the theory that the statements of Brown and/or Roach are admissions by a party-opponent under Tenn. R. Evid. 803(1.2)(E), which provides that "[a] statement offered against a party that is ... a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy" is not excluded as hearsay. In order to bring this exception into play, the plaintiff must prove that BH Construction and Mullen Construction were involved in a civil conspiracy. A civil conspiracy is a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn. 2001) (quoting *Dale v. Thomas H. Temple Co.*, 186 Tenn. 69, 208 S.W.2d 344, 353 (1948)).

> Each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent. *Dale*, 186 Tenn. at 90, 208 S.W.2d at 353–54. The agreement "need not be formal, the understanding may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy." *Id.* Finally, "it is [a] basic principle that each conspirator is responsible for everything done by his confederate which the execution of the common design makes probable as a consequence"; in other words, each conspirator is liable for the damage caused by the other. *Id.* 186 Tenn. at 90–91, 208 S.W.2d at 354; . . . .

*Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn.2001).

■ In the instant case, BH Construction had a construction contract with F & M Pizza but did not have a Tennessee general contractor's license, which is required by state law:

> Any person, firm or corporation engaged in contracting in this state shall be required to submit evidence of qualification to engage in contracting, and shall

be licensed as hereinafter provided. It is unlawful for any person, firm or corporation to engage in or offer to engage in contracting in the state, unless such person, firm or corporation has been duly licensed under the provisions of this chapter, as hereinafter provided. . . . Tenn.Code Ann. § 62–6–103(a)(1) (Supp. 2003). Mullen Construction agreed to "pull the permit," *i.e.,* obtain the permit, in its name, which would allow BH Construction—an unlicensed contractor—to do work it otherwise would not be authorized to do. This amounted to a civil conspiracy: the two companies combined forces to accomplish the unlawful purpose of allowing BH Construction to engage in contracting work in this state.

 Having found evidence of a civil conspiracy, we must determine if the statements of Brown and/or Roach were properly admitted into evidence under the co-conspirator hearsay exception. Our Supreme Court has analyzed this hearsay exception as follows:

The rationale for [the co-conspirator hearsay] exception is the principle of agency, under which each conspirator is bound to the actions and statements made by other conspirators during the course of and in furtherance of a common purpose. *See Tennessee Law of Evidence,* § 803(1.2).6, at 521.

Accordingly, for a statement to be admissible under this exception, the [plaintiff] must establish: 1) that there is evidence of the existence of a conspiracy and the connection of the declarant and the defendant to that conspiracy; 2) that the declaration was made during the pendency of the conspiracy; and 3) that the declaration was made in furtherance of the conspiracy. *See Tennessee Law of Evidence,* § 803(1.2).6, at 521–22. These requirements must be established by a preponderance of evidence. *See*

*State v. Stamper,* 863 S.W.2d 404, 406 (Tenn.1993).

*State v. Henry,* 33 S.W.3d 797, 801–02 (Tenn.2000).

Turning to the case at bar, we have previously found the existence of a conspiracy between BH Construction and Mullen Construction, which satisfies the first prong of the admissibility test. Next, the statements made by Brown and/or Roach—that BH Construction and Mullen Construction "were one [and] the same"—were certainly made during the pendency of the conspiracy. The conspiracy did not end, as Mullen Construction would have us believe, with the taking out of the permit. The purpose of the conspiracy was to pass BH Construction off as a licensed Tennessee general contractor; the taking out of the permit was only the beginning. The conspiracy was ongoing throughout the CiCi's Pizza project, which encompassed all of BH Construction's dealings—and key discussions—with the plaintiff and its representatives. Finally, the statements in question were made in order to convince the plaintiff that BH Construction was a licensed Tennessee general contractor, which furthered the purpose of the conspiracy, thereby satisfying the third prong of the admissibility test. Accordingly, we find that the statements made by Brown and/or Roach regarding the relationship between BH Construction and Mullen Construction are subject to the co-conspirator hearsay exception, and find no abuse of discretion in the trial court's admission of these statements into evidence.

 Mullen Construction contends that the plaintiff should not be allowed to argue the admissibility of the statements of the BH Construction representatives because, according to Mullen Construction, the plaintiff failed to properly plead the issue of a civil conspiracy. While the plaintiff did not use the phrase "civil con-

spiracy" in its pleadings, it did, in its response to Mullen Construction's motion for a more definite statement, claim that Mullen Construction had "illegally and knowingly allowed [BH Construction] to use Mullen's Tennessee Contractor's license to obtain solicitations and bids on the CiCi's Pizza project and illegally pull the building permits required by the City of Alcoa." Pleadings are designed to "give notice of the issues to be tried so that the opposing party can adequately prepare for trial." *Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn.2002) (citing *McClellan v. Bd. of Regents*, 921 S.W.2d 684, 688 (Tenn.1996)). It is clear from the case presented by the plaintiff at trial and the response of Mullen Construction to that proof, that the latter was well aware of the plaintiff's theory of civil conspiracy. Furthermore, we hold that the assertions in the plaintiff's response were sufficient to put Mullen Construction on notice of the plaintiff's theory of civil conspiracy. This issue was properly before the trial court and is now properly before us.

■■■ Mullen Construction also argues that the statements of Brown and/or Roach should be barred by the parol evidence rule, claiming that the subcontract was between the plaintiff and BH Construction, and that to allow evidence of statements indicating that BH Construction and Mullen Construction were essentially the same company would, arguably, vary the terms of the contract so as to make it an agreement between the plaintiff and Mullen Construction. Mullen Construction's reliance on the parol evidence rule is misplaced. The parol evidence rule provides that testimony of prior or contemporaneous oral agreements "is inadmissible to contradict, vary, or alter a written contract where the written instrument is valid, complete, and unambiguous, absent fraud or mistake or any claim or

allegation thereof." *Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 259 (Tenn.Ct.App. 1990) (citations omitted). The subject testimony in the instant case, which was accredited by the trial court, established either that there was an agency relationship between BH Construction and Mullen Construction or that they "were one [and] the same" in some other way. The thrust of this testimony was that when one dealt with BH Construction, it also dealt with Mullen Construction. There is nothing in the "subcontract" agreement between the plaintiff and BH Construction to the contrary. Under the agreement BH Construction undertook certain obligations. The subject testimony does not "contradict, vary, or alter" this in any way. The testimony simply adds an *additional* layer of responsibility to the plaintiff and an *additional* obligor to which the plaintiff can look for payment for its services.

### B.

■■■ Mullen Construction next contends that the trial court erred in finding that an agency relationship existed between it and BH Construction. We disagree.

In finding Mullen Construction liable to the plaintiff, the trial court relied on the doctrine of apparent agency. In expounding upon this doctrine, this court has stated the following:

Apparent agency is essentially agency by estoppel; its creation and existence depend upon such conduct by the apparent principal as will preclude him from denying another's agency. Generally, to prove apparent agency one must establish (1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third

person relied on this apparent authority to his or her detriment.

*Mechs. Laundry Serv. v. Auto Glass Co.,* 98 S.W.3d 151, 157 (Tenn.Ct.App.2002) (quoting *White v. Methodist Hosp. S.,* 844 S.W.2d 642, 646 (Tenn.Ct.App.1992)) (internal citations omitted).

In the instant case, it is clear that Mullen Construction "acquiesced" in BH Construction's "exercise of authority." Mullen Construction knew that BH Construction would have to hold itself out as a part of or an agent of Mullen Construction in order to convince its client and its subcontractors that it was licensed in Tennessee. As the trial court stated,

> But Mr. Mullen knew that by getting the contract or the permit in his name that [BH Construction] was going to have to convince everybody else in the world that they either were Mullen or were acting as Mullen's agent or that permit would have been pulled and the job closed down....

The plaintiff certainly had "knowledge" and "a good faith belief" that BH Construction had such authority, based upon the statements of Brown and Roach. In addition, the plaintiff had independently learned that Mullen Construction was licensed in the state of Tennessee, and the plaintiff's employee, Jones, was given a Mullen Construction business card with Mr. Mullen's name on it by Brown, indicating BH Construction's involvement with Mullen Construction. These facts are sufficient to arm the plaintiff with a good faith belief in BH Construction's identity and authority. Finally, there is no question that the plaintiff "relied on this apparent authority to [its] detriment." Accordingly, we hold that the trial court did not err in finding the existence of an agency relationship between BH Construction and Mullen Construction.

## C.

■■■ Finally, Mullen Construction argues that the trial court erred in revoking its license pursuant to Tenn.Code Ann. § 62–6–118. This statute provides, in pertinent part, as follows:

> (a)(1) Whenever any person, firm or corporation claims to have been damaged or injured by the gross negligence, incompetency, fraud, dishonest dealing and/or misconduct in the practice of contracting on the part of any person, firm or corporation licensed hereunder, files suit upon such claim in any of the courts of record in this state, and recovers judgment thereon, *such court may, as a part of its decree or judgment in such case, revoke the certificate of license under which such contractor is operating at the time of the aforementioned wrongdoing.*

(Emphasis added). Upon finding Mullen Construction liable to the plaintiff based upon Mullen Construction unlawfully obtaining the license for BH Construction, the trial court revoked its contractor's license. Mullen Construction asserts that, because the plaintiff did not ask for the license revocation in its pleadings, the trial court did not have the authority to grant such relief. *See Fidelity–Phenix Fire Ins. Co. v. Jackson,* 181 Tenn. 453, 181 S.W.2d 625, 629 (1944). However, the statute at issue gives the trial court the right to revoke the license *sua sponte.* There was no need for the plaintiff to request such relief in order to obtain it.

■■■ In addition, Mullen Construction contends that the revocation of its license was barred by the doctrines of res judicata and the election of remedies, as well as the statute of limitations. With respect to res judicata and the election of remedies, Mullen Construction argues that the complaint the plaintiff filed with the Tennessee Contractors Licensing Board

against Mullen Construction and the resulting $500 fine assessed against it was a final adjudication under the General Contractors Act, and that any other remedy under this act—such as the license revocation—is barred. This is simply incorrect. There is nothing in the act that prevents the trial court from revoking a contractor's license if that contractor has previously been fined or otherwise penalized for violations of the Act. Furthermore, Mullen Construction's reliance on the statute of limitations is misplaced, as the trial court had complete authority to revoke the license irrespective of whether the plaintiff requested such action.

In short, Tenn.Code Ann. § 62–6–118 grants a trial court the authority to revoke a contractor's license upon a finding that the contractor committed fraud, and there can be no error when the trial court acts accordingly.

## V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Mullen Construction Co., Inc. This case is remanded to the trial court for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law.