IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 11, 2024 Session

## CODIE LYNN ANDERSON v. LEAH RAE MARSHALL

**Appeal from the Juvenile Court for Dyer County
No. 21-JV-4  Jason L. Hudson, Judge**

_____

**No. W2023-00336-COA-R3-JV**
_____

This appeal concerns the change of custody and the relocation of a parent, as well as an evidentiary issue concerning the denial of the admission of certain psychiatric records. Because the mother failed to provide an offer of proof in connection with the juvenile court's ruling concerning the inadmissibility of the psychiatric records, we conclude that this evidentiary issue was not properly preserved for appellate review. Regarding the remaining issues, the juvenile court determined that a material change in circumstances had occurred and modified the parenting plan by designating the father as the primary residential parent and providing the father with the majority of the parenting time. Because we conclude that the juvenile court did not abuse its discretion in modifying the parenting plan, we affirm the juvenile court's modification. Furthermore, as discussed herein, we affirm the juvenile court's decision permitting the father to relocate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

W. Lewis Jenkins, Jr., and Caitlyn Clendenin, Dyersburg, Tennessee, for the appellant, Leah Rae Marshall.

Matthew W. Willis, Dyersburg, Tennessee, for the appellee, Codie Lynn Anderson.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

C. A. ("Child") was born to Leah Marshall ("Mother") in February 2015. A petition was filed on March 18, 2015, in the Lauderdale County Juvenile Court to establish

parentage and visitation. An agreed order of parentage was later entered stating that Codie Anderson ("Father") was the father of Child. Thereafter, a parenting plan was entered, which designated Mother as the primary residential parent. The plan provided Mother 245 days of parenting time, and 120 days for Father. On January 19, 2021, an agreed order to transfer venue of the matter to the Dyer County Juvenile Court was entered in the Lauderdale County Juvenile Court.

On February 2, 2021, Father filed a petition to change custody and for contempt of court in the Dyer County Juvenile Court ("Juvenile Court"). As to custody,[1] Father alleged there had been a material change of circumstances necessitating a modification of the permanent parenting plan and a change to the primary residential parent designation. He alleged the following change in circumstances in support of his petition:

    i.    Mother married and now resides with her husband and stepchildren.
    ii.    Mother moved from Lauderdale County, Tennessee to Dyersburg, Tennessee.
    iii.    Since entry of the original parenting plan, Mother has repeatedly denied Father shared parenting time.
    iv.    Mother has "distanced, isolated, and worked to alienate" Child from Father.

In connection with these allegations, Father argued that he should be designated the primary residential parent, though he asserted that Mother should still share parenting time. Mother filed a counter-petition to modify the parenting plan and for contempt. Therein, she claimed that Father subjected Child to corporal punishment, made derogatory comments concerning Mother in the presence of Child, and demonstrated anger issues, among other similar allegations. Moreover, Mother alleged that Child was attending counseling, that the counselor placed a report to the Tennessee Department of Children's Services ("DCS"), and that DCS had opened an investigation regarding Father's interactions with Child. For the foregoing reasons, Mother sought to reduce Father's allotted parenting time and for her to remain the primary residential parent.

In support of his allegations at the ensuing trial, Father submitted evidence that Mother had failed to meet Father to exchange Child for visitation on eighteen different occasions. In addition to these instances, Mother admitted that she would either keep Child home from school or check Child out of school early on days that Father was supposed to pick Child up from school. Additionally, Father complained of several more instances,

---

[1] Although numerous findings made by the Juvenile Court in connection with Father's petition for contempt were considered in determining whether a modification to the parenting plan was appropriate, Mother does not raise any issues as to the Juvenile Court's disposition concerning the contempt proceedings.

which took place after he filed his 2021 petition, in which Mother denied Father his visitation time.

In analyzing this evidence, the Juvenile Court placed emphasis on several of Mother's admissions concerning her noncompliance with the parenting plan. For example, Mother had stated that she had no excuse for failing to bring Child to the agreed upon location for exchange with Father, except for one instance in which she was recovering from a hysterectomy. However, even in that instance, she conceded that there was family available to take Child to the exchange location while she was recovering. Nonetheless, Mother contended that she avoided complying with the parenting plan because Child was allegedly experiencing anxiety and various anxiety-related physical symptoms related to visitation with Father.

Regarding this testimony, the Juvenile Court concluded that the anxiety experienced by Child was due to the "animosity" Mother felt towards Father and further found that Mother's violations of the parenting plan constituted a material change in circumstances. The Juvenile Court then considered whether a modification to the parenting plan was necessary, assessing the relevant best interest factors outlined in Tennessee Code Annotated section 36-6-106. As to the factors in favor of Mother, it determined that factors five[2] and ten[3] weighed in favor of her "by virtue of the current parenting plan designating [Mother] as the primary residential parent."

However, of note to the instant appeal, the Juvenile Court found that factors two and twelve weighed heavily in favor of Father. Specifically, regarding factor two,[4] it found that Mother failed to foster an environment where Father and Child could maintain a relationship, stating that Mother "puts her desires or interests ahead of her child's and his

---

[2] Factor five is described as "[t]he degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities[.]" Tenn. Code Ann. § 36-6-106(a)(5).

[3] Factor ten is described as "[t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment[.]" Tenn. Code Ann. § 36-6-106(a)(10).

[4] Factor two is described as

[e]ach parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order[.]

Tenn. Code Ann. § 36-6-106(a)(2).

relationship with his father." As to factor twelve,[5] the court noted, among other things, that Mother's husband, Justin Marshall, had filed two ex-parte orders of protection against Mother, although both were ultimately dismissed.

In consideration of the relevant factors,[6] the Juvenile Court concluded that it was in Child's best interest for Father to be designated the primary residential parent of Child.

Aside from the substantive determinations made by the Juvenile Court, Mother disputed an evidentiary decision made by the court during the trial. At or around 5:00 pm the day before the trial was set to begin, Mother sent Father a copy of psychiatric records concerning Child, notifying Father of her intention to offer the records into evidence. When Mother attempted to offer the records into evidence at trial the following day, Father objected, citing to Rule 902(11) of the Tennessee Rules of Evidence ("Rule 902") which states:

> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

To that end, Father argued that Mother did not notify him sufficiently in advance of her intention to offer Child's psychiatric counseling records. The Juvenile Court agreed with Father. Although it noted that Rule 902 does not define what amount of time would be sufficient, the Juvenile Court determined that less than twenty-four hours, as was the timeframe here, was insufficient notice. As such, it concluded that the psychiatric records were inadmissible.

In tandem with Father's petition for modification, the Juvenile Court heard arguments concerning Father's relocation from Tennessee to South Carolina, as in advance of the hearing, Father sent notice of his intent to relocate to South Carolina for a new job opportunity. He subsequently moved to South Carolina in June 2022. As reflected in an order entered by the Juvenile Court in June 2022, the parties agreed upon a temporary modification of the parenting plan, in light of Father's move and Child's summer schedule.

Although Mother does not dispute that Father provided notice of his intent to relocate as required by Tennessee Code Annotated section 36-6-108, she asserts that he was required to file a petition requesting the court to permit this relocation. Father

---

[5] Factor twelve is described as "[t]he character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child[.]" Tenn. Code Ann. § 36-6-106(a)(12).

[6] The Juvenile Court determined that the remaining factors were either inapplicable or weighed equally in favor of both parties.

acknowledges that he did not file a petition with the court but contends that it was not required in this case. Instead, Father argues that Mother's failure to file an objection in response to his notice of intent to relocate within thirty days permitted him to relocate without the need for the court to determine whether relocation is in Child's best interest. As discussed below, however, even though the Juvenile Court agreed with Father's position, it also ultimately determined that the relocation issue "has to be decided," stating that it "must consider if the relocation would also be in the best interest of the child." Thereafter, the Juvenile Court entered an order modifying parenting time, designating Father as the primary residential parent as noted above, and permitting Father's relocation.

In its judgment, the Juvenile Court signaled agreement with Father's contention that Mother's failure to file an objection in response to his notice permitted Father to relocate by operation of law. However, it nevertheless assessed whether relocation was in the best interest of Child, pursuant to the factors delineated in Tennessee Code Annotated section 36-6-108(c)(2). The Juvenile Court ultimately concluded from a consideration of these factors that allowing relocation was in Child's best interest.[7] In support of its conclusion that relocation was in Child's best interest, the court found, among other reasons, that Child had a good relationship with all his siblings and extended family; that there was no evidence to support that the relocation would have a significant impact on Child's physical, educational, or emotional development; that Father had attempted to promote Child's

---

[7] Tennessee Code Annotated section 36-6-108 provides the following factors for consideration in assessing whether relocation is in a child's best interests:

> (A) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life;
> (B) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
> (C) The feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties;
> (D) The child's preference, if the child is twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;
> (E) Whether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the nonrelocating parent;
> (F) Whether the relocation of the child will enhance the general quality of life for both the relocating parent and the child, including, but not limited to, financial or emotional benefit or educational opportunity;
> (G) The reasons of each parent for seeking or opposing the relocation; and
> (H) Any other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a).

Tenn. Code Ann. § 36-6-108(c)(2).

relationship with both parents while Mother had undermined that effort; and that Father's relocation was based upon a promotion opportunity, which would enhance the quality of Father's and Child's lives.

Mother now appeals from the Juvenile Court's judgment, raising multiple issues as noted below.

## ISSUES PRESENTED

Mother presents three issues for this Court's review, which we have restated, as follows:

I.      Whether the Juvenile Court correctly determined the best interest of the minor child in rendering its modification of the parenting plan.

II.     Whether Father's relocation comported with the requirements of Tennessee's parental relocation statute.

III.    Whether the Juvenile Court erred in excluding the counseling records, since those records pertained to the well-being of the child.

## STANDARD OF REVIEW

Because this case was tried before the Juvenile Court without a jury, we review all findings of fact "de novo upon the record . . . accompanied by a presumption of the correctness of the finding, unless a preponderance of the evidence is otherwise." Tenn. R. App. P 13(d). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing evidence." *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005). "This appeal also raises questions of statutory interpretation, 'which we . . . review de novo with no presumption of correctness.'" *Meyers v. First Tenn. Bank, N.A.*, 503 S.W.3d 365, 373 (Tenn. Ct. App. 2016) (citing *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 366 (Tenn. 2012)).

When reviewing decisions made regarding a parenting schedule, we employ the deferential abuse of discretion standard. *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017). "Under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

Regarding evidentiary questions, we also review such rulings under an abuse of discretion standard. *Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414 (Tenn.

Ct. App. 2004) (citing *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992)). "The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives." *Crowe v. First Am. Nat'l Bank*, No. W2001-00800-COA-R3-CV, 2001 WL 1683710, at *9 (Tenn. Ct. App. Dec. 10, 2001) (citing *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App.2000)).

## DISCUSSION

We first turn to the issue of the admissibility of the counseling records. At the outset, we note that Mother failed to make an offer of proof when the Juvenile Court sustained Father's objection to the admissibility of the counseling records. *See* Tenn. R. Evid. 103(a)(2) (requiring an "offer of proof to preserve a claim of error for appeal"). "[W]here an appellant fails to make an offer of proof, this Court will not reverse a trial court's evidentiary ruling." *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001) (citing *Shepherd v. Perkins Builders*, 968 S.W.2d 832, 834 (Tenn. Ct. App. 1997)). Accordingly, any other questions notwithstanding, the Juvenile Court's evidentiary decision on this matter is affirmed.

We next assess whether the Juvenile Court abused its discretion in finding that it was in Child's best interest for Father to become the primary residential parent of Child. On appeal, Mother argues that the Juvenile Court erred in failing to weigh the relative need for stability in Child's life in comparison to Father's right to visitation. In particular, Mother argues that she has been Child's primary caretaker since birth and that the change in his primary caretaker is a dramatic change in Child's stability.

We observe that Mother's history as primary caretaker and Child's stability were factors of considerable focus of the Juvenile Court. Of the best interest factors outlined in Tennessee Code Annotated section 36-6-106, factors five and ten outline the following considerations:

> (5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;
>
> . . .
>
> (10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . . .

Tenn. Code Ann. § 36-6-106(a). As stated in the order on appeal, the Juvenile Court found these factors in favor of Mother.

Conversely, the Juvenile Court found that factors two and twelve of the best interest factors weighed in favor of Father. These factors discuss the following considerations:

> (2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;
>
> . . .
>
> (12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;
> . . . .

*Id.* As referenced earlier in this Opinion, the Juvenile Court found that all other factors weighed equally in favor of Mother and Father or were inapplicable. Under these circumstances, it is apparent to us that Mother's repeated and willful violations of the visitation schedule drove the Juvenile Court's decision to make Father the primary residential parent.

When considering matters of custody and visitation, we favor and protect the right of a noncustodial parent to reasonable visitation. *Eldridge*, 42 S.W.3d at 85. In pertinent part, the Juvenile Court found that Mother had denied Father visitation numerous times before he filed his petition for modification. Notably, the Juvenile Court found that Mother continued to refuse Father visitation even after he filed the instant modification proceeding. Indeed, Mother admitted to multiple different violations of the original parenting plan.

Upon our review of the record, Mother has demonstrated continuous contempt for the parenting plan and Father's rights to visitation. Although Mother argues that she offers better stability for Child than Father, this argument fails muster when the record shows Mother cannot, or will not, maintain a regular visitation schedule. Conversely, Father has demonstrated compliance with the parenting plan. In light of Mother's continuous efforts to prevent Father from visiting with Child, we conclude that the Juvenile Court did not abuse its discretion in finding that it was in Child's best interest for Father to be the primary residential parent.

Lastly, we address the court's determination as to Father's relocation. Tennessee Code Annotated section 36-6-108 ("section 36-6-108") outlines the procedure that a relocating parent must follow, stating, in pertinent part:

(a) After custody or co-parenting has been established by the entry of a permanent parenting plan or final order, if a parent who is spending intervals of time with a child desires to relocate outside the state or more than fifty (50) miles from the other parent within the state, the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail. Unless excused by the court for exigent circumstances, the notice shall be mailed not later than sixty (60) days prior to the move. The notice shall contain the following:

(1) Statement of intent to move;

(2) Location of proposed new residence;

(3) Reasons for proposed relocation; and

(4) Statement that absent agreement between the parents or an objection by the nonrelocating parent within thirty (30) days of the date notice is sent by registered or certified mail in accordance with this subsection (a), the relocating parent will be permitted to do so by law.

(b) Absent agreement by the parents on a new visitation schedule within thirty (30) days of the notice or upon a timely objection in response to the notice, the relocating parent shall file a petition seeking approval of the relocation. The nonrelocating parent has thirty (30) days to file a response in opposition to the petition. In the event no response in opposition is filed within thirty (30) days, the parent proposing to relocate with the child shall be permitted to do so.

(c)(1) If a petition in opposition to relocation is filed, the court shall determine whether relocation is in the best interest of the minor child.

Tenn. Code Ann. § 36-6-108.

In the instant case, Mother agrees that the required statutory notice was sent. We observe that Mother received Father's notice of his intent to relocate to South Carolina prior to his move in June 2022. Furthermore, Mother did not raise an objection to Father's notice until August 2022, at the trial of this matter. Moreover, we highlight that, in the interim between Father's notice to relocate and the hearing, Mother had actually agreed to

- 9 -

temporarily modify the Child's summer visitation schedule, which followed the court's inquiry into whether the parties would modify the visitation schedule to "allow the child to travel less given the current residences of the parents." At the hearing, Mother argued that, although she did not raise a timely objection, Father should have filed a formal petition to relocate because the parties did not come to an agreement concerning relocation.

Although the Juvenile Court disagreed with Mother's contention, stating that her failure to object to Father's notice of relocation in a timely manner allowed Father to relocate without intervention from the Juvenile Court, it nonetheless assessed whether relocation was in Child's best interest and found that it was indeed in Child's best interest. Moreover, despite its agreement with Father on whether it legally needed to broach the relocation issue, the Juvenile Court actually stated, as noted earlier, that it "*must* consider if the relocation would also be in the best interest of the child." (emphasis added)

Whereas Mother argues that section 36-6-108 does not require the nonrelocating parent to object if the parents have not come to an agreement as to a visitation schedule and instead contends that Father was required to file a petition to relocate when there was no permanent agreement between the parties, we note that this Court has previously described the procedure and purpose of the statute as follows:

> The purpose of section 36-6-108(a)(4) is to provide the non-relocating parent with notice that he or she *must* object to the proposed relocation within thirty (30) days of the date the notice is sent or the relocating parent will be permitted by law to relocate with the child. Here, Mother notified Father of her intent to relocate on November 11, 2019. By letter of December 3, 2019, Father objected to the relocation, which prevented Mother's and the Child's automatic relocation.

*Franklin v. Franklin*, No. W2020-00285-COA-R3-CV, 2021 WL 5500722, at *3 n.3 (Tenn. Ct. App. Nov. 24, 2021) (emphasis added); *see also In re McKayla H.*, No. W2020-01528-COA-R3-JV, 2023 WL 2809507, at *5 (Tenn. Ct. App. Apr. 6, 2023) (quoting Tenn. Code Ann. § 36-6-108(b)) ("If the non-relocating parent timely objects to the relocation, 'the relocating parent shall file a petition seeking approval [from the court] of the relocation.'") (alteration in original); *Nance v. Franklin*, No. M2021-00161-COA-R3-JV, 2022 WL 4241374, at *3-4 (Tenn. Ct. App. Sept. 15, 2022) (determining that a father had preserved his right to contest a mother's relocation because he objected within thirty days). Because Mother did not timely object to Father's notice of relocation, we conclude that the Juvenile Court did not err in permitting Father's relocation.[8]

---

[8] In any event, despite signaling its agreement with Father's argument that his relocation was automatic in this case, the Juvenile Court nevertheless assessed whether Father's relocation was in the best interests of Child and determined it was. As such, we highlight that Father's relocation was deemed permissible by way of a consideration of Child's best interests, regardless if it had been automatic or not.

## CONCLUSION

For the foregoing reasons, the judgment of the Juvenile Court is affirmed.


_s/ Arnold B. Goldin_
ARNOLD B. GOLDIN, JUDGE