IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2024 Session

## IN RE REMINGTON G.

**Appeal from the Chancery Court for Maury County
Nos. A-029-018; 18JV-279      Stella L. Hargrove, Judge**

_____

### No. M2021-00680-COA-R3-PT

_____

A father filed a petition to establish parentage of the parties' child. At the trial on the petition, the trial court limited the evidence to events since a hearing on pendente lite parenting time that took place 47 days before the final hearing. We have determined that the trial court abused its discretion when it limited the evidence in this way. Therefore, we vacate the court's order in its entirety and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JEFFREY USMAN, J., joined.

S. Jason Whatley, Sr., Mt. Pleasant, Tennessee, for the appellant, Britney Gray

Adam Alexander Zanetis, Franklin, Tennessee, for the appellee, Rami Rafeh

### OPINION

BACKGROUND

Britney Gray[1] ("Mother") and Rami Rafeh ("Father") are the parents of Remington ("the child"), born in January 2018. A month before the child was born, Mother married her partner, Stephanie Gray ("Stepmother"), and took her surname. Stepmother was listed as the child's father on his birth certificate, and the child took Stepmother's surname. Mother did not initially make Father aware of the child's birth. Father first learned of the birth in March 2018. Father then requested a DNA paternity test, which demonstrated with

---

[1] Although this case is styled as a termination of parental rights case, the termination petition was dismissed and the case proceeded solely as a parentage and custody case. Therefore, we find it unnecessary to abbreviate the parties' names as we typically would in termination cases.

99.99% certainty that he was the father. Thereafter, Father began paying Mother $250 per month to help support the child. During this time and throughout the proceedings, Father resided in Texas. After learning of the child's birth, Father began traveling to Tennessee to visit the child several weekends a month and making video calls to him. This continued until January 2019, after which, Father alleged, Mother stopped allowing him to contact the child.

On August 20, 2018, Mother and Stepmother filed a petition in the Chancery Court for Maury County to terminate Father's parental rights and for adoption of the child by Stepmother. Two days later, Father filed a petition in the Juvenile Court for Maury County to establish parentage and for entry of a permanent parenting plan. On July 1, 2019, the juvenile court transferred the parentage petition to the Maury County Chancery Court, where the two cases were consolidated.

In January 2020, Father filed a motion for pendente lite parenting time alleging that, before he learned of the child's birth, Mother had told him she had aborted the child when she was ten weeks pregnant. After a hearing in early March 2020, the court entered an order awarding Father regular parenting time during the pendency of the litigation. In June 2020, Father filed another motion requesting extended pendente lite parenting time.[2] After another hearing in November 2020, the court entered an order permitting Father additional pendente lite parenting time.

Father filed another motion in November 2020 requesting overnight parenting time and holiday visits. The court held a hearing on this motion for overnight pendente lite parenting time on January 27, 2021. In an order entered in February 2021, the court awarded Father his first three overnight visits with the child.

On March 12, 2021, Mother filed a motion to continue the custody matter, asserting that the parties needed time to work together to resolve several remaining issues. The final hearing on both pending matters was held on March 15, 2021. On the morning of the hearing, Mother voluntarily dismissed the termination action, and only Father's petition remained before the court. At the start of the hearing, the court denied Mother's motion for a continuance. Father testified first. During the cross-examination of Father, Mother's counsel attempted to play a phone call between Mother and Father regarding the child's medication, and the following exchange took place:

| | |
|---|---|
| Mother's counsel: | Okay. I'm going to play an audio for you. You were on the phone with Ms. Gray regarding the Zoloft that the child is prescribed; okay? |
| Father: | Okay. Please. |

---

[2] Pursuant to Mother's request, the court transferred the matter to a different chancellor before the final hearing.

. . .

| | |
|---|---|
| Father's counsel: | When was this? |
| Mother's counsel: | I think it's dated on here. |
| The court: | I'm not going to go beyond the last hearing. |
| Father's counsel: | This was played at the last hearing, wasn't it? |
| The court: | We need a date. |
| Mother's counsel: | I'm sorry? |
| The court: | We need a date of what we're hearing. |
| Mother's counsel: | What's the date on that? |
| Mother: | I'm not sure. |
| The court: | We're not going to play it until we have a date. We don't want to go before January 21 – 27. |

Thus, the court did not allow Mother's counsel to follow this line of questioning.

For the remainder of the hearing, the court limited the proof to facts that occurred after the January 27, 2021 hearing. Later in Mother's cross-examination of Father, Mother's counsel attempted to question Father about his relocation to Texas. After Father's counsel objected because the relocation occurred before the January 27 hearing, Mother's counsel attempted to inform the court that this was new evidence the court had not yet heard. The court reiterated that it would not allow any proof from before the chosen date, stating its reasoning as: "It doesn't matter. You had a chance to present it," and "You had two chances. I think we had – we scheduled for a Monday, and then we continued to a Wednesday."

After Father, the following witnesses testified: Ragidah Rafeh, the child's paternal grandmother; Britney Rose, the child's services coordinator at Tennessee Early Intervention System; Christy Gonzales, the child's maternal grandmother through Mother; and Kim Beausheres, the child's maternal grandmother through Stepmother. Evidence at the trial showed that the child was on the autism spectrum and required speech, occupation, movement, and feeding therapies. The child's doctor had also prescribed an antidepressant for him. The parties agreed that Mother should remain the child's primary caregiver, but Father wanted more time with the child and wanted that time to begin sooner than Mother did. Father also requested that the court change the child's surname to Rafeh.

At the conclusion of proof, the court made a ruling from the bench that the child would have only Father's surname, stating, "He will have the name Rafeh only. We won't hyphenate. I see no reason to do that. This is his dad. Traditionally, our children take the father's name, and that will be the case here." The court also stated that it would broadly adopt Father's proposed parenting plan with some modifications. The court reserved judgment regarding Father's request for attorney's fees as he was seeking fees for both the termination and parentage actions. Mother requested retroactive child support, which the court summarily denied.

On May 20, 2021, the trial court entered a final order establishing Father as the child's biological father, incorporating a permanent parenting plan, changing the child's surname to Father's, and setting child support. The court awarded Father $45,000 in attorney's fees incurred in defending against both the termination petition and the paternity petition, citing "the vindictive nature" of Mother's opposition to the petition to establish paternity. Mother appealed.[3]

## STANDARD OF REVIEW

This case was tried before the court without a jury. Therefore, our review of the court's factual findings is de novo upon the record with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d). We review the court's conclusions on matters of law with no presumption of correctness. *Chaffin v. Ellis*, 211 S.W.3d 264, 285 (Tenn. Ct. App. 2006). Findings of fact based on witness credibility are given significant weight and will not be overturned unless there is clear and convincing evidence to the contrary. *Schaeffer v. Patterson*, No. W2018-02097-COA-R3-JV, 2019 WL 6824903, at *4 (Tenn. Ct. App. Dec. 13, 2019).

## ANALYSIS

The parties present several issues for our review, but we will consider only one because it is outcome determinative: whether the trial court abused its discretion in limiting evidence to events occurring after the January 27, 2021 hearing. For the reasons given below, we conclude that the trial court abused its discretion when it excluded evidence in this manner.

We review a trial court's decisions admitting or excluding evidence under an abuse of discretion standard. *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005). An abuse of discretion occurs when a court "causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). When applying the abuse of discretion

---

[3] Mother filed a notice of appeal on June 23, 2021. However, this appeal has since been subject to lengthy delays. On July 28, 2021, Mother filed a motion to stay attorney's fees pending appeal in the trial court, which, on August 10, 2021, granted Mother's motion on the condition that she secure an appeal bond of $60,000. Mother was unable to secure this bond. Therefore, in October 2021, Mother filed for Chapter 13 bankruptcy. In response, Father filed a motion to add Stepmother as a party for the purpose of limited relief. Because of the ongoing proceedings in the trial court, Mother filed a motion in this Court to extend the time to file her brief, which this Court granted on November 12, 2021. Over a year later, on November 16, 2022, the parties filed a joint motion to stay proceedings in this Court to allow for mediation between the parties. This Court then stayed the proceedings until the later of January 30, 2023, or thirty days after the supplemental record was filed. The appeal remained stayed until May 7, 2024, when the supplemental record was filed in this Court.

standard to evidentiary decisions, we also consider "'(1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives.'" *Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 419 (Tenn. Ct. App. 2004) (quoting *Crowe v. First Am. Nat'l Bank*, No. W2001-00800-COA-R3-CV, 2001 WL 1683710, at *9 (Tenn. Ct. App. Dec. 10, 2001)).

In the present case, the trial court excluded evidence by limiting the window of time to which evidence had to relate in order to be admitted. Mother asserts that she was denied a fair hearing because she was not permitted to adequately present her case by being limited to evidence occurring during the 47 days prior to the final hearing. Rulings which exclude evidence cannot be the basis for the assertion of error unless "'a substantial right of the party is affected.'" *Gillum v. McDonald*, No. M2003-00265-COA-R3-CV, 2004 WL 1950730, at *4 (Tenn. Ct. App. Sept. 2, 2004) (quoting TENN. R. EVID. 103(a)). Where evidence has been excluded, the Tennessee Rules of Evidence also require that "'the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context' within which the questions were asked." *Id.* (quoting TENN. R. EVID. 103(a)(2)). Importantly, Mother did not make an offer of proof for the excluded evidence. This would typically prove fatal to our review of whether the court's exclusion was an error. As we have previously stated:

> The due process right to a full hearing before a court includes the right to introduce evidence and have judicial findings based upon such evidence. *Baltimore & Ohio R.R. Co. v. United States*, 298 U.S. 349, 368-69, 56 S. Ct. 797, 80 L. Ed. 1209 (1936). An erroneous exclusion of evidence, however, does not require reversal unless we can determine the evidence would have affected the outcome of the trial had it been admitted. *Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn. Ct. App. 1987). The appellate courts cannot make such a determination without knowing what the excluded evidence would have been. *Stacker v. Louisville & N. R.R. Co.*, 106 Tenn. 450, 61 S.W. 766, 766 (Tenn. 1901); *Davis v. Hall*, 920 S.W.2d 213, 218 (Tenn. Ct. App. 1995); *State v. Pendergrass*, 795 S.W.2d 150, 156 (Tenn. Crim. App. 1989). It is for these reasons that the burden is on the party challenging the exclusion of evidence to make an offer of proof to enable the appellate court to determine whether the exclusion of proffered evidence was reversible error. TENN. R. EVID. 103(a)(2); *State v. Goad*, 707 S.W.2d 846, 853 (Tenn. 1986); *Harwell v. Walton*, 820 S.W.2d 116, 118 (Tenn. Ct. App. 1991).
>
> . . .
>
> Our courts have recognized two exceptions to the rule requiring an offer of proof. The first is contained in the rule itself and applies when the substance of the evidence and the specific evidentiary basis supporting

admission is apparent from the context of the questions. The second has been fashioned by the courts and applies when exclusion of the evidence seriously affects the fairness of the trial. *First Nat'l Bank & Trust Co. v. Hollingsworth*, 931 F.2d 1295, 1305 (8th Cir. 1991).

*Hill v. Hill*, No. M2006-01792-COA-R3-CV, 2008 WL 110101, at *5 (Tenn. Ct. App. Jan. 9, 2008). While we acknowledge that making an offer of proof for all of the evidence the court excluded would have been very difficult, the Rules of Evidence required Mother to do so. However, this case is an example of "'when the witness's previous responses, the wording of the question, and other evidence in the case reveal the substance of the excluded testimony.'" *Gillum*, 2004 WL 1950730, at *5 (quoting Neil P. Cohen et al., TENNESSEE LAW OF EVIDENCE § 1.03[5][a] and [c]). Her failure to move for an offer of proof, therefore, is not fatal to our analysis because the substance of the evidence is apparent from the context of the questions. Thus, we next consider whether the exclusion of this evidence implicated a substantial right. *See* Tenn. R. Evid. 103(a).

The only rationale given for the court's decision to exclude the evidence was that Mother "had an opportunity to present [the evidence]" at the January 27 hearing. It is important to note that the prior hearing, which the court stated gave Mother the chance to present evidence, only concerned whether Father should be given overnight pendente lite parenting time with the child. Indeed, the court's rationale came after Mother's counsel stated that the court had not previously heard the testimony she sought to elicit. The subject matter of the January 27 hearing was substantially more limited than the final hearing. Because of the more limited subject matter of the previous hearing, there was less of a focus on the long-term implications for the child compared to the final hearing at which a permanent parenting plan was to be entered.

At the time of the trial, the child was just over three years old and had several ongoing health problems that required various therapies to treat. It is apparent from the transcript that Mother and Father had strong disagreements regarding the necessity and scope of these treatments. For instance, Father repeatedly stated that he could provide better care for the child than the therapists Mother was taking the child to for treatment and that he wished to refuse treatment until he could speak to the child's doctors. The court expressed concern with Father's approach to the child's medical treatment and asked whether Father would provide the child with the necessary care while in his custody, to which Father replied that he would. The court's ruling limiting the evidence came in the context of Mother trying to play audio of Father speaking to Mother regarding the medication the child had been prescribed. Father's ability to provide care for the child, including medical care he has disagreements with, was of central importance to the best interests of the child. "While a trial court has broad discretion in fashioning a parenting plan, the touchstone is the best interest of the child." *Smallbone v. Smallbone*, No. M2020-01556-COA-R3-CV, 2022 WL 1405655, at *4 (Tenn. Ct. App. May 4, 2022). The court limiting evidence in such a drastic manner "substantially impaired the trial court's ability

to make an informed custody decision based on the best interest of the child." *Gillum*, 2004 WL 1950730, at *5.

In making our determination, we are guided by our decision in *Gillum v. McDonald*, where the trial court limited the proof offered to events occurring after the parties' divorce, a ruling the father asserted denied him a fair trial. *Id.* at *4. On appeal, to determine whether the limitation of evidence affected a substantial right we "consider[ed] all the relevant proof in order to determine the impact of the disputed evidence." *Id.* at *5. "An erroneous exclusion of evidence requires reversal only if the evidence would have affected the outcome of the trial had it been admitted." *Hill*, 2008 WL 110101, at *5 (citing *Pankow*, 737 S.W.2d at 298). The record before us contains numerous instances where the court limited evidence simply based on the time limitation, including Mother attempting to question Father regarding whether Mother had limited parenting time, why Father did not pay child support prior to January 27, 2021, why Father moved to Texas; and Mother questioning other witnesses if they had experience with the child's behavior after being returned from parenting time with Father. All of this evidence would have been directly related to the child's best interests, and the court should have heard this evidence. We, therefore, believe the inability of Mother to present her best case likely affected the outcome of the trial. Father's assertion that the court was able to take judicial notice of the evidence at the prior hearing and the findings contained in the order granting Father overnight parenting time does not negate our finding because Mother wished to present additional evidence that had yet to be presented.

For the foregoing reasons, we determine that the court exceeded its discretion when it excluded substantial and relevant evidence and that this ruling affected the substantial rights of both Mother and the child, whose best interest was at the heart of this inquiry. During the pendency of this appeal, the trial judge has retired,[4] and, because of the lengthy period this case was stayed on appeal, the evidence the court considered is several years old.[5] Therefore, under these circumstances, we find it necessary to order a new trial on remand consistent with this opinion.[6] Our decision to vacate the court's order, except for leaving the current parenting plan in place for purposes of consistency and simplicity only

---

[4] This Court routinely takes judicial notice of the retirement of judges during the pendency of an appeal. *See, e.g.*, *Sykes v. Cox*, No. M2022-00970-COA-R3-JV, 2023 WL 8797909, at *2 (Tenn. Ct. App. Dec. 20, 2023).

[5] As the evidence presented in this case previously is now several years old, we remind the trial court that it may, in its discretion, hear additional evidence that has happened during the pendency of this appeal regarding the best interests of the child.

[6] This Court has previously used its authority under Rule 36 of the Tennessee Rules of Appellate Procedure to order a new trial when the prior judge has retired. *See, e.g.*, *Sykes*, 2023 WL 8797909, at *2 (citing TENN. R. APP. P. 36 as authority for this Court to order a new trial under the rule's language that this Court may "grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires").

pending further order from the trial court, and remand for a new trial necessarily pretermits Mother's remaining issues. As Father is not the prevailing party, we decline to address his request for attorney's fees.

CONCLUSION

The judgment of the trial court is vacated in part, leaving only the current parenting plan in place for the sake of consistency and simplicity pending further orders from the trial court. The case is remanded for a new trial consistent with this opinion. Costs of this appeal are assessed against the appellee, Rami Rafeh, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE